Dingley *v.* Robinson.

DINGLEY *vs.* ROBINSON.

One having fraudulently obtained goods under pretence of a purchase, the creditor pursued him for satisfaction; and a compromise was so far effected, as that, for a valuable consideration, the creditor affirmed the sale from himself, and agreed that the debtor might sell the goods to A. Afterwards, the original term of credit having expired, the creditor sued the debtor, and attached the same goods as his property; and in an action of tresspass, brought by A against the sheriff for taking these goods, it was held that the terms of the agreement did not estop the creditor from impeaching the sale to A as fraudulent.

THIS was an action of trespass against the sheriff of this county, for taking certain goods, claimed by the plaintiff.

At the trial before *Weston J.* it appeared that one *John Reed Jr.* had fraudulently obtained, under pretence of fair purchase, a large quantity of goods from divers persons in *Portland,* the particulars of which are stated in the case of *Seaver v. Dingley,* 4. *Greenl.* 306. Among these were certain goods, to the value of about 450 dollars obtained from *Bartels & Baker.* The goods having arrived in a vessel at *Gardiner,* on the way to *Clinton,* where *Reed* resided, were conveyed by him to *Dingley,* the plaintiff, *Aug.* 20 1824, who landed and stored them there. *Bartels & Baker,* having discovered the fraud of *Reed,* in falsely representing his character and circumstances, pursued him, to obtain payment or indemnity; and on the 24th of *August* 1824, entered into a compromise, by which *Reed,* and *Dingley,* the plaintiff, give them quitclaim deeds of certain real estate, and of a patent clapboard machine, for the nominal consideration of a thousand dollars; but of the real value of about three hundred; and they signed a memorandum on the back of *Reed's* original bill of parcels of the goods, of the following tenor :—" We hereby agree with *Nathaniel Dingley,* that he may purchase of the within named *Reed* the within described goods; and that we have no claim on the same, but have sold the same to said *Reed,* and expect to look to him for the pay for the same." It did not appear that at this time *Bartels & Baker* had any knowledge of the previous conveyance to *Dingley.* After

this, when the original credit agreed upon had expired, they sued *Reed* for the price of the goods, and attached the parcel conveyed to *Dingley*, as *Reed's* property, on the ground that the conveyance was fraudulent.

The plaintiff contended that the defendant, acting for *Bartels & Baker*, could not impeach the transfer as fraudulent against them, by reason of the transactions of the 24th of *August*. But the Judge ruled otherwise, reserving the point, however, for the consideration of the court ; and instructed the jury that if they were satisfied, from the evidence, that the sale from *Reed* to *Dingley* was fraudulent, to find for the defendant ; which they did.

*R. Williams* and *Boutelle*, for the plaintiff, contended that the creditors were estopped to impeach the sale to him, having waived their right for a valuable consideration, by their agreement on the back of the bill of parcels. And this agreement amounts to a ratification of the sale previously made by *Reed* to the plaintiff, and a stipulation to resort to him alone for the payment. 1. *Pick.* 164. *Steele v. Brown* 1. *Taunt.* 382.

But if not, yet they have no right to impeach the sale, until they have reconveyed the property which the plaintiff conveyed to them.

*Allen* and *Sprague*, for the defendant, argued that the agreement meant nothing more than an affirmance of the original purchase by *Reed*, and a consent that *Dingley* might purchase the goods of him, for a valuable consideration ; not that he might take them by fraud, and without payment.

To the point that the transaction was not an estoppel, they cited 15. *Mass.* 106. *Black v. Tyler* 1. *Pick.* 150. 1. *Str.* 79. *Thurbane's case,* *Hardr.* 323. 5. *Dane* 383, *ch.* 160, *art.* 1, *sec.* 22. *Bayley on bills* 66. 14. *Mass.* 437.

WESTON J. delivered the opinion of the Court, at the ensuing *June* term in *Penobscot.*

*John Reed* obtained on credit of *Bartels & Baker,* merchants in *Portland,* the goods, for the taking of which this action is brought ; but under circumstances of fraud on the part of *Reed,* which gave to

Dingley *v.* Robinson.

them a right to vacate the sale. This fact appeared at the trial; has been assumed in the argument; and is implied from the certificate making a part of this case, introduced and relied upon by the plaintiff; although it is not distinctly stated in the report.

On the part of the plaintiff it is urged that, as between *Reed* and himself, the sale to him was good, and that *Bartels & Baker* having agreed, for a valuable consideration, not to interfere with it, ought not to be permitted so to do. Or that, if their agreement was intended as a waiver of their right to reclaim the goods, by reason of the circumstances under which they were procured from them, it is a virtual and substantial violation of that agreement to attempt to take them from the plaintiff, by attaching them as the property of *Reed*. But upon consideration, we cannot understand from the certificate, that any thing more was intended or implied, than that *Bartels & Baker* hereby affirmed the sale to *Reed*, as it was competent for them to do; and agreed to look to him for payment therefor, and not to reclaim the goods, by replevin or otherwise, as their property, upon the ground that a fraud had been practised upon them by *Reed*. They cannot be considered as having agreed that the plaintiff might fraudulently, under the form and pretence of a sale, take possession of these goods, and defeat their right to attach them as the property of *Reed*. They agreed that the plaintiff might purchase the goods, and that for this purpose they might be considered as belonging to *Reed;* but by a purchase, we must understand a *bona fide* purchase, not one infected with fraud. It has been insisted that this construction is too narrow and limited; inasmuch as the plaintiff might have purchased the property of *Reed* for a valuable consideration and held it, without obtaining the permission and assent of *Bartels & Baker*. This is true, provided he was ignorant of the circumstances under which *Reed* procured them. But it is sufficiently apparent, from the solicitude he discovered to induce them to affirm their sale, and the valuable consideration he paid them therefor, that he knew that they had a right at their election to vacate the sale, and to reclaim the goods.

The opinion of the court is, that *Bartels & Baker*, by reason of

the said certificate, were not restrained from attaching the goods in question, as the property of *Reed ;* and that there must therefore be

Judgment on the verdict.